# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LAQUESTON GOFF, | ) |
| | ) NO. 3:22-cv-00215 |
| v. | ) |
| | ) JUDGE CAMPBELL |
| UNITED STATES OF AMERICA | ) |

## MEMORANDUM

Pending before the Court is Petitioner LaQueston Goff's *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. No. 1) and Supplemental Claim (Doc. No. 8), to which the Government has responded (Doc. No. 11). Petitioner filed a Reply (Doc. No. 21), a memorandum with supplemental citations and exhibits (Doc. No. 24), and supplemental memoranda concerning *Erlinger v. United States*, 602 U.S. 821 (2024) (Doc. No. 28, 30-1). For the reasons set forth herein, Petitioner's *pro se* Motion (Doc. No. 1) and the supplemental petitions will be **DENIED**, and this action **DISMISSED**.

### I. BACKGROUND[1]

On May 9, 2018, a grand jury returned an indictment charging Petitioner with possession of a firearm and ammunition as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924. (CR Doc. No. 1). Petitioner requested a bench trial and waived his right to a jury trial. (CR Doc. No. 137, 140). Following a three-day bench trial, the Court found Petitioner guilty of the charged offense. (*See* Tr. Trans. Vol. III (Sept. 24, 2020), CR Doc. No. 161 at PageID # 1075).

Following the trial, Petitioner's trial counsel moved to withdraw due to a non-waivable

---

[1] Citations to the underlying criminal record, *United States v. Goff*, Case No. 3:18-cr-00111, are cited as "CR Doc. No. ____." Unless otherwise stated, all citations to "Doc. No. ___" are to the instant habeas case.

conflict of interest (CR Doc. No. 156), and the Court appointed Patrick McNally, an experienced criminal defense attorney, to represent Petitioner (CR Doc. No. 158). The Presentence Investigation Report ("PSR") indicated that Goff qualified as an Armed Career Criminal under 18 U.S.C. § 924(e), based on "at least three prior convictions for a violent drug felony or serious drug offense." (CR Doc. No. 212 at 12). The PSR listed the following three predicate offenses:

1. On November 14, 2005, he was convicted of Sale of Cocaine More Than 0.5 Grams in Maury County Criminal Court, Columbia, Tennessee, in Docket No. 15917;

2. On March 14, 2006, he was convicted of Aggravated Assault in Maury County Criminal Court, Columbia, Tennessee, in Docket No.: 15933; and

3. On December 4, 2009, he was convicted of Aggravated Battery in Stephenson County Circuit Court, Freeport, Illinois, in Docket No.: 2009CF198.

(*Id.*). Armed Career Criminals are subject to a mandatory sentence of not less than fifteen years (180 months). (18 U.S.C. § 924(e)). The PSR also calculated an advisory Sentencing Guidelines Range of 262 to 327 months' incarceration, based on a total offense level of 34 and criminal history category VI. (CR Doc. No. 212 at 32).

Through counsel, Petitioner reached an agreement with the Government that he would: (1) waive his right to appeal his conviction and sentence; and (2) agree that he was an Armed Career Criminal for purposes of sentencing; and the Government would recommend a sentence of 180 months incarceration. (*See* Joint Sentencing Memorandum, CR Doc. No. 185; McNally Decl., Doc. No. 11-1). The Court followed the parties' joint recommendation and sentenced Petitioner to 180 months imprisonment. (*See* CR Doc. Nos. 194, 195).

Mr. McNally submitted a declaration in which he explained:

5. I was aware that the draft PSR calculated that Mr. Goff qualified for punishment as an Armed Career Criminal under 18 U.S.C. 924(e) and, further, that the advisory Guideline Range in the PSR was 262 to 327 months' incarceration. I consulted with Mr. Goff's trial counsel who had been relieved from his representation about the PSR's determination Mr. Goff was an Armed Career Criminal.

6. Mr. Goff and I extensively discussed the prospect that Mr. Goff qualified for punishment as an Armed Career Criminal. As a part of those discussions, we discussed what would happen if he proceeded to sentencing and that, if we objected to the PSR's determination that he qualified for the Armed Career Criminal penalties, the Government would have to prove that Mr. Goff qualified as an Armed Career Criminal. We also discussed that the court would have to find that he qualified for that punishment in order for him to receive it. Mr. Brand accompanied me and participated in most of the discussions with Mr. Goff.

7. Based on those conversations, it is my firm belief that Mr. Goff fully understood which prior convictions of his led to the PSR's conclusion that he was an Armed Career Criminal. Further, it is my firm belief that Mr. Goff fully understood the sentencing process, that he could object to the PSR's determination he was an Armed Career Criminal, what the Government would have to show if he objected to the PSR's determination that he was an Armed Career Criminal, and how the court would make the final determination on his punishment.

8. It is my firm belief that Mr. Goff also understood that, if he was determined to be an Armed Career Criminal at a sentencing hearing, that the court could sentence him up to life imprisonment. It is my firm belief that Mr. Goff understood that the Guideline Range of 262 to 327 months' incarceration, as described in the PSR, was a necessary starting point for the court at sentencing even if the court decided ultimately to vary downward and give him a lower sentence.

9. During these discussions I gave Mr. Goff my professional opinion that it was very likely that the court would determine that he was an Armed Career Criminal. In discussing his post-trial options, Mr. Goff and I discussed the possibility that he could enter an agreement with the Government where both parties would recommend a specific sentence. We discussed the strategy of approaching the Government with the

3

proposal to waive certain post-trial rights, concede that he was an Armed Career Offender, in exchange for an agreed upon recommended sentence of 180 months. We agreed on this negotiation strategy and believed it was in his best interest.

10. Mr. Goff and I also discussed that, in my professional opinion, he would have limited chances for a new trial on appeal and that, again in my professional opinion, there were not any errors by the trial court that would result in the Sixth Circuit determining that he would be entitled to a new trial.

11. After discussions with Mr. Goff and with the Government, I presented Mr. Goff with the following proposition to which the Government had stated they would agree: the Government would agree to a joint recommendation with the defense for 180 months' incarceration in exchange for Mr. Goff waiving his right to appeal the verdict and the sentence and his making statements on the record regarding his desire to go to trial regardless of what prior advice he had been given by prior counsel.

12. During these discussions about whether to accept this proposed agreement, Mr. Goff and I discussed the fact that, if he accepted his proposal, he would have to agree that he was an Armed Career Criminal at sentencing meaning that the Government would not have to prove that he was an Armed Career Criminal or offer any records to demonstrate at sentencing that he was, in fact, an Armed Career Criminal . It is my firm belief that Mr. Goff understood this fact. I made certain Mr. Goff understood his choices and the ramifications of the choices because of the unusual and serious nature of compromise.

13. Mr. Goff accepted the proposition and authorized me to communicate that acceptance to the Government, which I did. As a result, the parties then entered a joint sentencing recommendation for 180 months' incarceration and filed that with the court. Mr. Goff agreed not to seek an appeal of his sentence or the court's verdict. Mr. Goff also agreed to make statements on the record that he intended to try his case whatever the advice of his prior counsel had been regarding the potential sentence he may receive if convicted. I reviewed the Joint Sentencing Memorandum with Mr. Goff prior to sentencing.

14. At the sentencing hearing, I did not request that the Government put on proof or otherwise demonstrate that Mr. Goff was, in fact, an Armed Career Criminal, because Mr. Goff had authorized me to concede that he was an Armed Career Criminal in order to enter into

4

15. the proposed agreement on a joint sentencing recommendation. Mr. Goff was sentenced to 180 months in the Bureau of Prisons as he requested.

15. I submit that, based on my education, training, and experience as a criminal defense attorney, this was a good decision on the part of Mr. Goff because he would have almost certainly been found to be an Armed Career Criminal at sentencing and would have been facing a far more serious sentence than the one he ultimately received.

(McNally Decl., Doc. No. 11-1).

Petitioner now contends that Mr. McNally's failure to challenge the determination that Petitioner was an Armed Career Criminal constituted ineffective assistance of counsel. Petitioner submits that his 2006 Aggravated Assault conviction in Maury County, Tennessee, was not a "crime of violence" and the Government would have been unable to establish he qualified as an Armed Career Criminal, and he would have been subject to a Sentencing Guidelines range of 110 months and received a lower sentence. In supplemental filings Petitioner argues that the determination that he qualified as an Armed Career Criminal was unlawful under *Erlinger v. United States*, 144 S. Ct. 1840 (2024).

## II. LEGAL STANDARD

Petitioner brings this action pursuant to 28 U.S.C. § 2255. Section 2255 provides a statutory mechanism for challenging the imposition of a federal sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). To obtain relief under Section 2255, a petitioner "must demonstrate the

5

existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States,* 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003)); *see also*, *Wright v. Jones*, 182 F.3d 458, 463 (6th Cir. 1999).

To prevail on an ineffective assistance of counsel claim, the burden is on the petitioner to show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) actual prejudice resulted from the deficient performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland*, 466 U.S. at 669; *Ludwig v. United States*, 162 F.3d 456, 458 (6th Cir. 1998). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. In order to establish prejudice, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. at 669.

If a factual dispute arises in a Section 2255 proceeding, the court is to hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). An evidentiary hearing is not required, however, if the record conclusively shows that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b); *Ray,* 721 F.3d at 761; *Arredondo v. United States,*

6

178 F.3d 778, 782 (6th Cir. 1999). Having reviewed the record in Petitioner's underlying criminal case, as well as the filings in this case, the Court finds it unnecessary to hold an evidentiary hearing because disposition of Petitioner's claims does not require the resolution of any factual dispute.

## III.     ANALYSIS

### A. Ineffective Assistance of Counsel

Petitioner claims that the attorney representing him at sentencing rendered ineffective assistance of counsel because he failed to challenge Petitioner's designation as an Armed Career Criminal under 18 U.S.C. § 924(e) (the "ACCA"). Petitioner contends the Government would not have been able to prove that his Tennessee aggravated assault conviction qualified as violent felony. (*See* Doc. No. 2).

At the time of the offense, the Tennessee aggravated assault statute, Tenn. Code Ann. § 39-13-102, provided:

> (a)  A person commits aggravated assault who:
>   (1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and:
>     (A)  Causes serious bodily injury to another; or
>     (B)  Uses or displays a deadly weapon; or
>
>   (2) Recklessly commits an assault as defined in § 39-13-101(a)(1), and:
>     (A)  Causes serious bodily injury to another; or
>     (B)  Uses or displays a deadly weapon; or
>
> (b)  A person commits aggravated assault who, being the parent or custodian of a child or the custodian of an adult, intentionally or knowingly fails or refuses to protect the child or adult from an aggravated assault as defined in subdivision (a)(1) or aggravated child abuse as defined in § 39-15-402.
>
> (c)  A person commits aggravated assault who, after having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause

> bodily injury or in any way committing or attempting to commit an assault against an individual or individuals, intentionally or knowingly attempts to cause or causes bodily injury or commits or attempts to commit an assault against the individual or individuals.
>
> (d) (1) Aggravated assault under subdivision (a)(1) or subsection (b) or (c) is a Class C felony. Aggravated assault under subdivision (a)(2) is a Class D felony. …

Tenn. Code Ann. § 39-13-102 (2005).

Petitioner argues that the Court must presume that the "conviction rested on nothing more than the least of the acts criminalized," which, in this case, is not a violent felony. (Petitioner's Memo., Doc. No. 2 (citing *United States v. Burris*, 912 F.3d 386, 406 (6th Cir. 2019), abrogated on other grounds by *Borden v. United States*, 593 U.S. 420 (2021)); *see also*, Petitioner's Supp. Brs., Doc. Nos. 8, 21). Petitioner points to the Supreme Court's decision in *Borden*, which was issued shortly before Petitioner's sentencing hearing, in which the Court held that a criminal offense requiring only a mens rea of recklessness cannot count as a violent felony under the elements clause of the ACCA. (Petitioner's Supp. Br., Doc. No. 8 (citing *Borden*, 593 U.S. 420, 429 (2021)). Petitioner is correct on the law, but incorrect on its application to the facts here – specifically, that the Government would not have been able to prove that his 2006 Tennessee conviction for aggravated assault was a qualifying violent felony under the ACCA.

The Tennessee aggravated assault statute is a divisible statute—meaning that it "sets out one or more elements of the offense in the alternative." *United States v. Phillips*, 768 F. App'x 474, 477 (6th Cir. 2019). When a statute is divisible, the Court applies a modified categorial approach to determine which set of elements provided the basis for the conviction. *Id*. Under the modified categorial approach, the Court may consider certain court records to narrow a defendant's

conviction to a particular set of elements. *See Shepard v. United States*, 544 U.S. 13, 16 (2005) ("[A] later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."); *see also Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016) ("[A] sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of."); *Descamps v. United States*, 570 U.S. 254, 265 (2013) (same).

Petitioner argues that the Court could not determine which variant of aggravated assault applied to his conviction from the Judgment or the plea petition. (Petitioner Supp. Br., Doc. No. 24). The Judgment indicates that Petitioner was originally indicted on the offense of Attempted First Degree Murder, a Class A felony, and he was convicted of Aggravated Assault, Tenn. Code Ann. § 39-13-102, a Class C felony. (*See* Doc. No. 11-2 at PageID# 164). The plea petition does not provide additional information. (*See* Doc. No. 11-2 at PageID# 159-63).

Based on information available in the Judgment, it is apparent that Petitioner's conviction was either under subsection (a)(1) or subsections (b) or (c). Consideration of the charging documents makes clear that only subsection (a)(1) could apply. The Indictment provides additional information about the original charge: "Laqueston Dwayne Goff, on or about the 4th day of August, 2005, in Maury County, Tennessee … did unlawfully, knowingly, intentionally, deliberately and with premeditation attempt to kill Christopher Drumright by the use of a deadly weapon, to-wit: a gun, in violation of Tennessee Code Annotated 39-12-101, and Tennessee Code Annotated 39-13-202 [First Degree Murder]." (*See* Doc. No. 11-2 at PageID# 157).

9

The Indictment does not allege circumstances under which subsections (b) and (c) could apply. Because Petitioner could only have been convicted of the offense charged in the Indictment or a lesser included offense, neither subsection (b), which requires Petitioner to have been the custodian or guardian of a child, or (c), which requires Petitioner to have been under a restraining order, could apply. *See United States v. Davis*, 900 F.3d 733, 737-38 (6th Cir. 2018) ("Under Tennessee law, 'the accused may be convicted only of a crime which is raised by the indictment or which is a lesser-included offense thereof.'"). Accordingly, Petitioner's aggravated assault conviction was under subsection (a)(1). The Sixth Circuit has determined Tenn. Code Ann. § 39-13-101(a)(1) is a crime of violence under the ACCA's use-of-force clause. *See Davis*, 900 F.3d at 738.

Based on this analysis, counsel's recommendation that Petitioner agree to not challenge his designation as an Armed Career Criminal in exchange for the Government's recommendation that he receive a sentence of imprisonment of 180 months and consequent failure to raise such a challenge at the sentencing hearing did not fall below an objective standard of reasonableness and did not deny Petitioner effective assistance of counsel. As explained in the declaration of counsel, had Petitioner put the Government to its burden of proof concerning the qualifying convictions, the Government almost certainly would have been able to show Petitioner qualified as an Armed Career Criminal and Petitioner would have faced a much higher Sentencing Guideline range of 262 to 327. (*See* McNally Decl., Doc. No. 11-1; *see also*, PSR, CR Doc. No. 212).

As part of his argument that his attorney was ineffective for failing to hold the Government to its burden on proof regarding the predicate offenses, Petitioner also cites his 2009 conviction for aggravated battery in Stephenson County Circuit Court, Freeport, Illinois. But he does not

10

Case 3:22-cv-00215   Document 33   Filed 11/06/24   Page 10 of 14 PageID #: 277

provide any specific arguments concerning the Government's ability to establish that the Illinois conviction qualifies as a predicate offense under the ACCA. In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Here, defense counsel's professional recommendation that Petitioner concede that he was an Armed Career Criminal in exchange for an agreed sentencing recommendation of 180 months imprisonment was not ineffective. Counsel explained that based on his review of the record that "it was very likely that the Court would determine that he was an Armed Career Criminal," and that Petitioner would then be subject to a much higher Guideline Range. (*See* McNally Decl., Doc. No. 11-1). Of course, the Government was not held to its burden of proof and the *Shepard* documents related to the Illinois conviction are, therefore, not part of the record. Based on the description of the charged conduct in the PSR – that Petitioner struck a woman in the face with his fists resulting in a laceration under her eye that was bleeding extensively and required medical attention – counsel's assessment was not unreasonable.

## B. *Erlinger v. United States*

After Petitioner submitted his initial brief and several supplemental briefs, he submitted additional memoranda concerning the applicability of the Supreme Court's recent decision in *Erlinger v. United States*, 602 U.S. 821 (2024). (*See* Petitioner's Brs., Doc. Nos. 28, 29, 30-1). Petitioner argues that under *Erlinger*, the ACCA sentencing enhancement is illegal because it was not "charged in the indictment and found by a jury (trier of fact) on proof beyond a reasonable doubt." (*See* Petitioner's Supp. Br., Doc. No. 28 at 2). Petitioner contends *Erlinger* "must be applied retroactively." (*See* Petitioner's Supp. Br., Doc. No. 30-1). The Government did not file a

response, so the Court will proceed to consider Petitioners' *Erlinger* argument without the benefit of a response from the Government.

In *Erlinger*, 602 U.S. 821, the Supreme Court held that, under *Apprendi v. New Jersey*, 530 U.S.466 (2000), the question of whether predicate offenses occurred on separate occasions is a question of fact that must be determined by a unanimous jury beyond a reasonable doubt. *Erlinger v. United States*, 602 U.S. at 835. There is no dispute that *Erlinger*, which was decided after Petitioner's sentencing, makes clear that the different occasions inquiry must be decided by a jury (or conceded by the defendant). It is not clear whether *Erlinger* applies when a defendant has waived his right to a jury trial as Mr. Goff did here. However, the Court need not consider whether such a waiver applies because *Erlinger* is not retroactive on collateral review.

"In *Teague v. Lane*, 489 U.S. 288 (1989), and subsequent cases, the Supreme Court explained the framework for determining when rules apply retroactively to final criminal judgments." *Duncan v. United States*, 552 F.3d 442, 444 (6th Cir. 2009). "Under *Teague*, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases still on direct review." *Id*. (citing *Griffith v. Kentucky*, 479 U.S. 314 (1987)). "The *Teague* inquiry consists of three steps: (1) establishing the date that the defendant's conviction was final; (2) determining whether a court, at the time the defendant's conviction is final, would have felt compelled to hold that the rule the defendant now seeks to use was then required by the Constitution; and if the rule is new (3) assessing whether the new rule falls within one of the two narrow *Teague* exceptions." *Regalado v. United States*, 334 F.3d 520, 527 n.8 (6th Cir. 2003) (citing *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994)).

"The first [*Teague*] exception is for new rules that place 'certain kinds of primary, private

12

individual conduct beyond the power of the criminal law-making authority to proscribe.'" *Id*. (citing *Teague*, 489 U.S. at 307). "The second exception is for 'watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'" *Id*. (citing *Saffle v. Parks*, 494 U.S. 484, 488 (1990) (internal quotation marks omitted)).

The *Teague* inquiry easily leads to the conclusion that *Erlinger* announced a new rule of criminal procedure that is not retroactive. The rule is new because at the time Petitioner's conviction became final, trial courts routinely decided the question of whether a defendant's prior convictions satisfied the occasions inquiry of the ACCA. The rule announced does not fall within the first *Teague* exception, nor is it a "watershed rule of criminal procedure." As with other decisions based on *Apprendi*, the rule announced in *Erlinger* "merely 'allocate[d] decision making authority' by requiring a jury rather than a judge" to make certain factual determinations. *See Duncan v. United States*, 552 F.3d 442, 447 (6th Cir. 2009) (citing *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)). As is regularly recognized, there is no indication that "juries [are] so much more accurate than judges such that the change brought about [by the new rule] 'implicated the fundamental fairness and accuracy of the criminal proceeding.'" *Id*. (quoting *Schriro*, 542 U.S. at 353)); *see also In re Mazzio*, 756 F.3d 487, 491 (6th Cir. 2014) (holding that *Alleyne* is not retroactive); *Goode*, 305 F.3d 382 (holding that *Apprendi* is not retroactive); *Delgado v. United States*, 334 F.3d 520, 527 (6th Cir. 2003) (*Apprendi* is not retroactive); *Humphress v. United States*, 398 U.S. F.3d 855, 863 (6th Cir. 2005) (*Booker* is not retroactive).

Because the rule announced in *Erlinger* is not retroactive on collateral review, Petitioner is not entitled to relief under Section 2255 on this basis.

Nor is petitioner entitled to relief based on ineffective assistance of counsel for failing to

13

challenge the sentencing enhancement based on the constitutional principles applied in *Erlinger*. As an initial matter, Petitioner would be hard pressed to argue that his attorney should have predicted the decision. *See Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 288 (6th Cir. 2010) ("Counsel is not ineffective for failing to predict developments in the law, unless they were clearly foreshadowed by existing conditions."). Moreover, to obtain relief based on ineffective assistance of counsel, Petitioner would have to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. at 669. Here, Petitioner does not contend the results of the proceeding would have been different had a jury decided questions of fact related to his ACCA designation.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has not shown deficient performance by Mr. McNally at sentencing. Accordingly, Petitioner's Motion and Supplemental Claim (Doc. No. 1, 8) will be **DENIED**, and this action will be **DISMISSED**.

An Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

14

Case 3:22-cv-00215   Document 33   Filed 11/06/24   Page 14 of 14 PageID #: 281